# Exhibit A

**Management Employment Agreement**



Ecolab Center
St. Paul, MN 55102

**This AGREEMENT is made and entered into between Ecolab Inc., a Delaware corporation, its parent companies, sister companies and subsidiaries (hereafter the "Company") and _____ (the "Employee").**

The Company's business is highly competitive and the Company has invested considerable sums of money in developing products, equipment, training programs, sales programs, technical service programs and account records for the proper servicing of its customers. Employee is being hired or promoted by the Company into a management position where Employee will have an opportunity to help shape, supervise and carry out strategic business plans and opportunities for the Company. Employee acknowledges that this Agreement is a pre-condition of Employee's management position and receipt of related benefits. While employed with the Company, Employee has and will continue to receive valuable training and has been and will be entrusted with sensitive, confidential information about the Company. In return, Employee agrees not to use this training and information to unfairly compete against the Company. Employee also agrees that the restraints imposed by this Agreement are reasonable and necessary to protect the Company's business, goodwill, customer relationships, and the jobs of other Company employees.

Therefore, in consideration of the covenants and agreements contained herein, and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1. The Company will employ Employee in a management position for such period of time and for such compensation, including salary and employee benefits, as may be mutually agreeable to both parties. Both the Company and Employee shall have the right to terminate the employment at any time, and Employee's employment shall be, at all times, terminable at will. This at-will employment relationship may not be modified except as in writing signed by Employee and an authorized officer of the Company.

2. Employee acknowledges that as a result of Employee's employment with Ecolab, Employee will acquire knowledge of Company's Trade Secrets and its Confidential Information, which may include without limitation, information regarding present and future operations, customers and suppliers, pricing, margins, business strategies, business methods, product formulae, and employees (including the particular skills, talents and abilities of those employees).

Employee hereby agrees that Employee will hold in a fiduciary capacity for the benefit of the Company, and shall not directly or indirectly use or disclose any Trade Secrets, as defined hereinafter, that Employee may have acquired during the term of Employee's employment with Company for so long as such information remains a Trade Secret.

The term "Trade Secret" as used in this Agreement shall mean information pertaining to Company including, but not limited to, a formula, pattern, compilation, program, device, method, technique or process, financial data, financial plans, product plans, a list of actual or potential customers or suppliers, pricing information, information about customer contacts, requirements or purchasing patterns, or the identities of or contact information for actual or potential customers or suppliers of Company that both:

(a) derives economic value, actual or potential from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(b) is the subject of efforts by Company that are reasonable under the circumstances to maintain its secrecy.

In addition to the foregoing and not in limitation thereof, Employee agrees that while employed with the Company and for a period of three (3) years after termination of Employee's employment with the Company, Employee will hold in a fiduciary capacity for the benefit of the Company and shall not, directly or indirectly, use or disclose any Confidential Information, as defined hereinafter, that Employee may have acquired (whether or not developed or compiled by Employee and whether or not Employee was authorized to have access to such Confidential Information) during the term of, in the course of, or as a result of Employee's employment by Company.

The term "Confidential Information" shall mean the Company's confidential data or information which is valuable to Company but substantially inaccessible to the public and to competitors of the Company, including, without limitation, business information, financial data, product information, the identities and contact information of actual or potential customers or suppliers, pricing information, and other information of a proprietary nature regarding the Company's business operations, excluding Trade Secrets. Notwithstanding the foregoing, the term Confidential Information shall not include information that Employee can establish by

competent proof: (i) was generally known to or accessible by the public at the time Company disclosed the information to Employee; (ii) became generally known to or accessible by the public after disclosure by the Company through no act or omission by Employee; or (iii) was disclosed to Employee, after the Employee's termination of employment from the Company, by a third party having a bona fide right both to possess the information and to disclose the information to Employee, provided such third party is not subject to an obligation of confidentiality with respect to such information.

The Company will train Employee in Employee's particular management position and will provide Employee with special techniques and information, including Confidential Information, which the Company believes will be helpful and necessary to the performance of Employee's duties.

Employee understands Employee may not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a Trade Secret that is made (a) in confidence to a federal, state or local government official, either directly or indirectly, or to an attorney if such disclosure is made solely for the purpose of reporting or investigating a suspected violation of law or for pursuing an anti-retaliation lawsuit; or (b) in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal and Employee does not disclose the Trade Secret except pursuant to a court order.

3.  Ecolab is committed to compliance with applicable federal, state and local laws. As such, nothing in this Agreement prohibits Employee from reporting possible violations of law to any government agency if such report is made in confidence and good faith to a federal, state or local government official, either directly or indirectly, solely for the purpose of reporting or investigating a suspected violation of law or for pursuing an anti-retaliation lawsuit relating to such report. Nothing in this Agreement is to be construed to prohibit the Company from bringing any claims against Employee, including but not limited to, statutory claims for Trade Secret misappropriation. Nothing in this Agreement is to be construed to unlawfully limit any rights Employee may have under the National Labor Relations Act.

4.  Employee will not accept any other full or part-time employment to be performed in whole or in part while still employed by Company without first notifying Company of the nature and location of such other employment and the name of such other employer. Employee will not accept any such employment if it in any way interferes with the performance of Employee's duties to Company or represents an unreasonable risk of compromising Confidential Information.

5.  During Employee's employment with Company, Employee agrees not to plan, organize or engage in any business competitive with any product or service marketed, or planned for marketing by Company or participate with or assist others to do so.

6.  When Company owned computers, computer devices, e-mail addresses, phones and/or electronic devices are issued to Employee, Employee shall conduct Company business and communicate with customers, vendors and the public regarding Company business only on the Company computer network and using such Company-provided electronic technology. Employee agrees that Employee will not transfer or store any Company information on any device or other storage medium (physical or virtual) not provided or authorized by the Company unless authorized to do so by the Company in writing. Employee has no right to privacy with respect to any data that is stored on any device issued to Employee by the Company and/or authorized for Employee to use for Company business. As soon as Employee begins to consider leaving the Company or Employee realizes Employee's employment with the Company has or will soon come to an end, Employee will not wipe, delete or transfer or cause any Company data to be wiped, deleted or transferred from any such device before returning the device to the Company.

7.  Subject to the provisions of Section 9, Employees are free at any time to leave the employment of Company upon proper notice and, subject to the limitations set forth herein, accept any job that utilizes Employee's general education and skills except one that would create an unreasonable risk of compromising Company's Confidential Information.

8.  If Employee's new employer could be construed as a Conflicting Organization (as defined in Section 9), Employee will inform Employee's new employer, prior to accepting employment, of the existence of this Agreement and provide such employer with a copy. Employee will provide to the Company written assurances satisfactory to the Company describing Employee's position and that it will not compromise the Company's customers and/or Confidential Information, and will not violate the terms of this Agreement.

9.  For a period of eighteen (18) months after Employee's employment with Company ends:

(a) Employee will not within the Restricted Territory (as defined below) render services to a Conflicting Organization (as defined below) in any role or position that is the same or substantially similar to any position Employee held at the Company in the eighteen (18) month period immediately preceding Employee's cessation of employment with the Company;

(b) Employee will not solicit, encourage or induce any Customer (as defined below) for the purpose of

2

providing them a Conflicting Product or Service (as defined below);

(c) Employee will not transact business with any Customer, for the purpose of providing a Conflicting Product or Service;

(d) Employee will not within the Restricted Territory provide services to a Conflicting Organization in any position in which any reliance on the use or disclosure of the Company's Confidential Information to which Employee was exposed during the last eighteen (18) months of Employee's employment with the Company would inevitably support or facilitate the performance of Employee's duties for a Conflicting Organization;

(e) Employee will not hire or induce, attempt to induce or in any way assist or act in concert with any other person or organization in hiring, inducing or attempting to induce any employee or agent of Company to terminate such employee's or agent's relationship with Company. This restriction is limited to those employees that Employee managed, or supervised, or had material contact with on the Company's behalf during the last eighteen (18) months of Employee's employment with Company.

For purposes of this Agreement, "Restricted Territory" means any of the following severable territories:

i. United States.

ii. Any state in the United States in which the Company shipped products or provided services at any time during the eighteen (18) months immediately preceding Employee's cessation of employment with the Company.

iii. Any county, province, or parish or any substantially similar territorial unit in which Employee provided services or products on behalf of the Company during the eighteen (18) month period preceding the termination of Employee's employment with the Company.

The parties agree that the aforementioned territories are intended to be severable in the event a court were to determine any territory to be overbroad.

For purposes of this Agreement, a Customer of the Company is defined as a customer with whom Employee in the past twelve (12) months:

i. Had material business contact with on behalf of the Company; or

ii. Whose account was assigned to Employee; or

iii. Whose account was assigned to another employee that Employee supervised or managed; or

iv. About or from whom Employee received confidential information.

Nothing in the covenants in Subsections 9(a) or 9(b) would prohibit Employee's employment with a Conflicting Organization in a capacity unrelated to a Conflicting Product or Service.

For the purposes of this Agreement, a "Conflicting Product or Service" means any product or process of, or service by, any person or organization other than Company, in existence or under development, which is the same as or similar to or improves upon or competes with a product or process of, or service rendered by, Company which Employee either worked on, performed or sold during Employee's last eighteen (18) months of their employment by Company.

A "Conflicting Organization" means any person or organization (including one owned in whole or in part by Employee) which is engaged in or is about to become engaged in the research on, or the development, production, marketing or sale of, or consulting pertaining to, a Conflicting Product or Service.

10. Employee will fully and promptly communicate to Company in writing all inventions, improvements, devices, processes, treatments, formula, and compounds, whether patentable or not (hereinafter "Inventions") which are first conceived or first reduced to practice by Employee, whether individually or jointly with others, during Employee's employment and which pertain to Company's business. Inventions shall be deemed to pertain to Company's business if they relate to any business in which Company is actively engaged, to any business in which Company is conducting research or considering conducting research and development, or to any business which is directly related to any work actually assigned to Employee by Company. All such Inventions shall be the sole and exclusive property of Company and Employee hereby assigns all right, title and interest in and to such Inventions to Company. Any Inventions, which relate to the business of Company, first disclosed by Employee to anyone within one (1) year after termination of Employee's employment with Company shall be deemed to have been first conceived by Employee during Employee's employment with Company. The provisions of this Section shall not apply to an Invention for which no equipment, supplies, facilities or Trade Secret information of Company was used and which was developed entirely on Employee's own time and (1) which does not relate to Company's business or development, or (2) which does not result from any work performed by Employee for Company.

11. Employee will keep and maintain adequate and current written records of all Inventions at all stages of development, in the form of notes, sketches, drawings

3

and reports relating thereto. All such records shall be and remain the property of Company at all times. Upon termination of employment, Employee agrees to return all such records to Company and shall not keep copies of such records. Employee will also, during and after Employee's employment by Company, at the request of Company, assist Company in every way proper to obtain and to vest in its title to patents on such Inventions in all countries by executing and delivering all documents necessary or desirable to accomplish such end. If Company becomes involved in any litigation, arbitration proceeding or any administrative proceeding that requires Employee's assistance, Employee will cooperate with Company both during and after Employee's employment and will render such assistance and advice to Company as Company may deem necessary or desirable. Company will reimburse Employee for all expenses reasonably incurred by Employee in performing the acts for Company described in this Section and if Employee is no longer employed by Company at the time, Company shall compensate Employee at an hourly rate commensurate with Employee's then current rate of salary.

12. Upon termination of Employee's employment and/or promptly upon request, the Employee will return in good order all Company property and information in the Employee's possession, custody or control. Upon termination, Employee shall return all Company data, business information, credit cards, keys, automobiles and any other Company property in Employee's possession. Employee shall not erase or delete any Company data from Company phones or computer or other electronic devices except as may be necessary in the regular course of conducting business for the Company. For example, it would be a violation of this provision for Employee to accept a position with another entity and/or give notice of Employee's resignation and then delete and/or erase Company data from Employee's Company assigned phone and/or computer device.

13. In the event the Employee violates, or the Company reasonably believes the Employee is about to violate, this Agreement, the Employee agrees that the Company is entitled to injunctive relief to prevent violation(s) and/or preserve the *status quo* and confidentiality of the Company's Confidential Information and Trade Secrets. The Employee agrees that in any proceeding alleging breach of this Agreement, each party shall have the right to engage in deposition and document discovery, and the Company will have the right to conduct forensic examination(s) of any computers and/or electronic devices in the Employee's possession or control, if the Company reasonably believes such devices contain Company Confidential Information. The Employee further agrees that in connection with any application for injunctive relief, discovery shall be conducted on an expedited basis.

14. All of the provisions of the Agreement which are to be effective following termination of Employee's employment, shall be effective whether or not such termination was voluntary or involuntary. Employee warrants that prior to entering into this Agreement Employee has disclosed to Company any agreements with any previous employers which would prevent Employee from performing any duties for Company.

15. This Agreement shall not become effective or be binding upon Employee and Company until accepted on behalf of Company by the signature hereon of a corporate officer of Company in St. Paul, Minnesota. This Agreement supersedes any previous agreements between Employee and Company, written or oral, relating to this subject matter and may be amended or modified only by a writing signed by Employee and a corporate officer of Company. Notwithstanding the previous sentence should a court of competent jurisdiction invalidate the restrictive covenants set forth at Section 9 because of either: (1) lack of consideration, or (2) for being unenforceable and not subject to being reformed by severing or modification, the next most recent agreement between Employee and Company containing such noncompete restrictions shall be given effect. All references to Company shall be construed to include subsidiaries of Company.

16. If any of the provisions of this Agreement are held to be invalid or unenforceable by a court of competent jurisdiction, such holding shall not invalidate any of the other provisions of this Agreement, it being intended that the provisions of this Agreement are severable. The provision held to be invalid or unenforceable shall be deemed modified to the minimum extent necessary to make that provision consistent with applicable law, and in its modified form, that provision shall then be enforceable.

17. The restrictive covenants and provisions contained in this Agreement, including but not limited to Section 9, each paragraph and subparagraph, are severable. The parties further agree that if any of the restrictions set forth in any section and/or any paragraph and the subparagraphs contained therein shall be held not to be enforceable because they are overbroad for any reason whatsoever, it is agreed that the restriction shall be effective to such extent as it may be enforceable. The parties specifically authorize a court of competent jurisdiction to strike, amend and/or alter such provisions to the extent necessary to render them reasonable and enforceable as this is the mutual intent of the Parties. This Agreement and the covenants herein shall inure to the benefit of the Company's successors or assigns.

18. In any successful proceeding brought to enforce the Company's rights under this Agreement, the Company shall recover court costs and reimbursement of Company's attorney's fee and disbursements. These damages are in addition to any other relief, including injunctive relief, to which the Company may be entitled.

Accepted by
Ecolab Inc.

*[signature: Laurie M. Marsh]*

Laurie Marsh
By

Executive Vice President, Human Resources
Title

_____
Date

I have carefully read and understand and agree to all of
the terms of this agreement.

_____
Employee Signature

_____
Date

**Signature:** *Scott Shanklin*
Scott Shanklin (Dec 20, 2019)

**Email:** john.shanklin@ecolab.com

5
Employee Agreement – Management Employment Agreement 11012019