UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| ECOLAB, INC., | ) | |
| | ) | Civil Action No. 3:23-CV-215-CHB |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER GRANTING IN PART** |
| | ) | **MOTION FOR TEMPORARY** |
| JOHN SCOTT SHANKLIN and | ) | **RESTRAINING ORDER,** |
| WASHING SYSTEMS, LLC, | ) | **PRELIMINARY INJUNCTION, AND** |
| | ) | **EXPEDITED DISCOVERY** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Ecolab, Inc. has moved for a temporary restraining order, preliminary injunction, and expedited discovery. [R. 7]. Specifically, Ecolab seeks a temporary restraining order and preliminary injunction to enforce its Employment Agreement (the "Agreement") with Defendant John Shanklin by preventing Shanklin and his new employer, Defendant Washing Systems, LLC, from engaging in competitive business through use of Ecolab's confidential information or trade secrets; from doing business with Ecolab's customers or in a manner that would violate the Agreement's non-competition, non-solicitation, or non-disclosure covenants; and from otherwise using or disclosing Ecolab's confidential information or trade secrets. [R. 7-6, pp. 3–5].

Ecolab also seeks leave to commence expedited discovery, including depositions of Shanklin and a Fed. R. Civ. P. 30(b)(6) deposition of Washing Systems, to be limited to three (3) hours, and requests for documents immediately in aid of the preliminary injunction proceeding. *Id.* at 5. Lastly, Ecolab requests that Defendants be ordered to make certain electronic devices available for inspection and imaging. *Id.*

The Court held a telephonic conference on the matter on May 11, 2023. [R. 11]. Counsel Craig Siegenthaler and Kris Leonhardt participated in the hearing on behalf of Plaintiff Ecolab. *Id.*

at 1. Counsel Jeremy Rogers and Suzanne Marino participated on behalf of Defendants Shanklin and Washing Systems. *Id.* Becky Boyd served as the Court's official reporter. *Id.* at 2.

During the telephonic conference, counsel for Defendants agreed to much of the requested relief sought by Ecolab and the parties subsequently tendered a stipulation reflecting the agreed upon issues. [R. 12-1]. Based on the parties' stipulation, and for the reasons explained below, the Court will grant Plaintiff's request for a temporary restraining order, set a hearing on its request for a preliminary injunction, and grant in part its request for expedited discovery.

## I. Background

According to Ecolab's Verified Complaint, Defendant John Shanklin was employed by Plaintiff Ecolab, Inc. from 2010 until he resigned without notice on March 14, 2023. [R. 1 (Complaint), ¶ 31]. At the time of his departure, Shanklin served as Assistant Vice President of Sales for Ecolab's Textile Care Division. [R. 7-1, p. 2]. Shanklin is now employed by Defendant Washing Systems, LLC, which the parties agree is a competitor[1] of Ecolab. On December 20, 2019, Shanklin entered into an Employment Agreement with Ecolab, which contained the following restrictive covenants:

> (a) Employee will not within the Restricted Territory (as defined below) render services to a Conflicting Organization (as defined below) in any role or position that is the same or substantially similar to any position Employee held at the Company in the eighteen (18) month period immediately preceding Employee's cessation of employment with the Company;
>
> (b) Employee will not solicit, encourage or induce any Customer (as defined below) for the purpose of providing them a Conflicting Product or Service (as defined below);
>
> (c) Employee will not transact business with any Customer, for the purpose of providing a Conflicting Product or Service;
>
> (d) Employee will not within the Restricted Territory provide services to a Conflicting Organization in any position in which any reliance on the use or

---

[1] Defendants' counsel acknowledged this fact during the telephonic conference.

disclosure of the Company's Confidential Information to which Employee was exposed during the last eighteen (18) months of Employee's employment with the Company would inevitably support or facilitate the performance of Employee's duties for a Conflicting Organization.

[R. 7-2 (Employment Agreement), ¶ 9(a)-(d)].

In addition to breaching the Agreement, Ecolab alleges that in the weeks leading up to his resignation, and after he had accepted new employment with Washing Systems, Shanklin "downloaded numerous files from his Ecolab-owned laptop(s) onto a personal flash drive, including files containing Ecolab's highly-sensitive trade secret and confidential information." [R. 7-1, p. 2]. According to Ecolab, even after Shanklin resigned on March 14, 2023, he took more than a month to return his company-issued laptops on April 24, 2023, and only returned his company-issued cell phone after the instant motion for temporary restraining order was filed. *See* [R. 1 (Complaint), ¶ 61]. In addition, during the telephonic conference, Ecolab reported that Shanklin has still not returned the confidential information and trade secrets he downloaded to his personal thumb drive, or offered the thumb drive itself, to Ecolab.

During the telephonic conference, Defendants' counsel admitted that Shanklin and Washing Systems had been communicating for weeks, and possibly even months, before Shanklin's resignation from Ecolab, and that Shanklin had accepted employment with Washing Systems prior to his resignation, although he did not officially begin work until March 20, 2023.

**II. Analysis**

**A. Temporary Restraining Order**

The Sixth Circuit has described a temporary restraining order as "an extraordinary remedy designed for the limited purpose of preserving the status quo pending further proceedings on the merits[.]" *Stein v. Thomas*, 672 Fed. App'x 565, 572 (6th Cir. 2016). It is considered an "extraordinary remedy" because "our entire jurisprudence runs counter to the notion of court action

- 3 -

taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Reed v. Cleveland Bd. Of Educ.*, 581 F.2d 570, 573 (6th Cir. 1978) (quoting *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 439 (1974)).

To determine whether such relief is appropriate, the Court must balance the following four factors:

> (1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction.

*Ohio v. Becerra*, No. 21-4235, 2022 WL 413680 at *2 (6th Cir. Feb. 8, 2022) (quoting *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002)). Importantly, while this inquiry requires the Court to balance multiple factors, "the existence of an irreparable injury is mandatory." *Becerra*, 2022 WL 413680, at *2 (quoting *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019)).

Additionally, a court may only issue a temporary restraining order without notice to the adverse party or its attorney if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition [and] (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b). Ecolab filed a Verified Complaint and various evidentiary submissions, including declarations and exhibits, in support of their motion for temporary restraining order. *See* [R. 1]; [R. 7-2]–[R. 7-5]. The Defendants have been provided with notice, and the Court held a telephonic conference with all counsel. During the telephonic conference, counsel for Defendants was given the opportunity to respond to Ecolab's motion. Even so, Defendants have not had a full opportunity to respond to the verified complaint and motion for temporary restraining order.

Having reviewed the pleadings, and being otherwise sufficiently advised, the Court makes the following findings.

### 1. Likelihood of Success

Plaintiff has shown a strong likelihood of success on the merits of its Defend Trade Secrets Act ("DTSA") and Kentucky Uniform Trade Secrets Act ("KUTSA") claims (Counts I and II, respectively) and its breach of contract claims (Counts III, IV, and V).[2]

### i.     Misappropriation of Trade Secrets

The Court turns first to the likelihood of Ecolab's success on its claims for misappropriation of trade secrets against Shanklin and Washing Systems. "To make a claim for misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), a plaintiff must establish an unconsented disclosure or use of a trade secret by one who used improper means to acquire the secret; or, at the time of the disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret." *JTH Tax, Inc. v. Freedom Tax, Inc.*, No. 3:19-CV-85-RGJ, 2019 WL 2057323, at *5 (W.D. Ky. Mar. 15, 2019).; *see also* 18 U.S.C. § 1829(5). Along the same lines, "[t]o prevail under KUTSA, Plaintiffs must show both misappropriation and that the information misappropriated qualifies as trade secrets under KUTSA." *Auto Channel, Inc. v. Speedvision Network, LLC*, 144 F.Supp.2d 784, 794 (W.D. Ky. 2001). "Similar to the DTSA, a trade secret under Kentucky law requires that the information at issue (1) have independent economic value, (2) not be generally known or readily ascertainable by proper means, and (3) be the subject of reasonable efforts to maintain its secrecy." *C-Ville Fabricating, Inc. v. Tarter*, No. 5:18-CV-379-

---

[2] For purposes of this temporary restraining order, because the Court has found a likelihood of success on Ecolab's breach of contract claims against Shanklin and its misappropriation of trade secrets clams against Shanklin and Washing Systems, it need not determine whether Ecolab is likely to succeed on the merits of its tortious interference claim against Washing Systems.

KKC, 2019 WL 1368621, at *14 (E.D. Ky. Mar. 26, 2019) (citing *BDT Products, Inc. v. Lexmark Int'l, Inc.*, 274 F.Supp.2d 880, 890 (E.D. Ky. 2003)). Ecolab has identified a list of documents which Shanklin downloaded to a personal thumb drive in the weeks leading up to his resignation. *See* [R. 7-4]. Ecolab contends at least some of the documents Shanklin downloaded constitute trade secrets related to its customer AUS, which recently released a bid process for its work. Specifically, "these materials included AUS [customer] reports, presentation materials, and account reviews, as well as other proprietary information relating to other accounts, Ecolab's field agent contact information and internal strategic initiatives." [R. 7-1, p. 19]. Ecolab notes that many of the documents were marked "CONFIDENTIAL" or "had other indicia of their restricted use." *Id.* During the telephonic conference, Ecolab's counsel also noted that this information included pricing and strategic information concerning AUS and how to retain its business.

"Business information such as pricing and customer sales information may constitute a protected trade secret under the UTSA where such information is not publicly known or otherwise ascertainable by proper means." *Smart & Associates, LLC v. Independent Liquor (NZ) Ltd.*, 226 F. Supp. 3d 828, 856 (W.D. Ky. 2016) (citations omitted); *see also C-Ville*, 2019 WL 1368621, at *13 (noting trade secrets may include "costs and price lists, marketing and business strategies, inventory and pricing costs, and calculations related to profit margins"). In addition, courts can look to the efforts undertaken to keep information confidential to determine whether that information qualified as a trade secret. *See Church Mut. Ins. Co. v. Smith*, 3:14-CV-749-JHM, 2015 WL 3480656, at *4 (W.D. Ky. June 2, 2015) ("Trade secrets are valuable because they are secret—the secret information gives the user a competitive edge in a market for the very reason that the information is unknown to competitors."); *Cmty. Ties of Am., Inc. v. NDT Care Servs., LLC*, No. 3:12-CV-00429-CRS, 2015 WL 520960, at *11 (W.D. Ky. Feb. 9, 2015) ("CTA's client

list, client files, and employee files are trade secrets subject to the KUTSA's protection, because they were kept under 'double lock and key,' were valuable in the industry, did not contain information known to the general public, and were subject to confidentiality agreements protecting the information and prohibiting the employees from revealing the information upon separation from employment.").

Ecolab argues the information Shanklin downloaded constitutes trade secrets because it is not publicly available nor known outside of Ecolab, and Ecolab has invested substantial time and money into developing these materials. [R. 7-1, p. 20]; *see also* [R. 1 (Complaint), ¶ 26]. Ecolab also notes that it has taken reasonable steps to protect its trade secrets and confidential information by requiring employees like Shanklin to execute confidentiality agreements and by securing the information on a secure computer network. [R. 7-1, pp. 20–21]; *see also* [R. 1 (Complaint), ¶ 36]. During the telephonic conference, Defendants' counsel argued that Ecolab had failed to meet the requisite showing that the information Shanklin downloaded constitutes trade secrets, but the Court disagrees. Ecolab took reasonable efforts to maintain the confidentiality of the information at issue, which it attests is highly sensitive and would allow a competitor to gain a significant advantage. *See Alph C. Kaufman, Inc. v. Cornerstone Indus. Corp.*, 540 S.W.3d 803, 817 (Ky. Ct. App. 2017) (crediting testimony that purported trade secret "was valuable and confidential because it would allow a competitor to underbid [defendant] and to negotiate favorable deals with [defendant's] suppliers that would in turn allow the competition to match or narrowly beat [defendant's] bids").

Importantly, in February 2023, one of Ecolab's largest Textile Care Division accounts, Aramark Uniform Services (AUS), informed Ecolab that it planned review their business relationship. [R. 7-1, pp. 20–21]; *see also* [R. 1 (Complaint), ¶ 36]. AUS also informed Ecolab of its plan "to solicit additional RFPs from two of Ecolab's competitors, one of which is Washing

Systems." [R. 7-1, p. 4]; *see also* [R. 1 (Complaint), ¶ 57]. Consequently, Ecolab contends that "beginning in mid-to-late February 2023 and thereafter, Ecolab's Trade Secret and Confidential Information relating to Ecolab's relationship with AUS and Ecolab's strategies relating to the impending RFP process would be particularly valuable to Washing Systems." [R. 7-1, pp. 20–21]. The Court agrees. Moreover, Shanklin's failure to timely return his company issued laptop(s) until around April 24, 2023, and his failure to turn over his company-issued cell phone until after the instant motion for temporary restraining order was filed, cuts against Defendants' counsel's representation during the telephonic conference that Shanklin and Washing Systems are not attempting to use Ecolab's confidential information or trade secrets. Ecolab is likely to succeed on this point, as the information at issue contains all the hallmarks of trade secrets.

Moreover, for purposes of injunctive relief, the Court need not wait until trade secrets are misappropriated where evidence plainly shows such misappropriation is imminent. *See JTH Tax*, 2019 WL 2062519, at *13 ("[A] court may . . . grant an injunction . . . to prevent … threatened misappropriation," or the court may award "damages for actual loss caused by the misappropriation of the trade secret"); *see also Fres-co Sys. USA, Inc. v. Hawkins*, 690 F. App'x 72, 76 (3d Cir. 2017) ("[M]isappropriation of trade secrets need not have already occurred to warrant injunctive relief; threatened misappropriation is sufficient."); *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 114 (3d Cir. 2010) ('the proper inquiry . . . is whether there is sufficient likelihood or substantial threat of a defendant disclosing trade secrets') (internal quotation marks omitted).

Thus, on the current record, the Court finds Ecolab is likely to succeed on the merits of its DTSA and KUTSA claims, and this factor counsels in favor of granting a temporary restraining order related thereto. Moreover, as discussed in the section below, even if the information

downloaded by Shanklin does not constitute trade secrets, it was nevertheless confidential and Shanklin would be in breach of the Agreement to impermissibly download it to a personal thumb drive. The Court turns next to Ecolab's likelihood of success on its breach of contract claims against Shanklin.

### ii. Breach of Contract

"To prevail on a breach of contract claim in Kentucky, a plaintiff must demonstrate by a preponderance of the evidence that (1) a contract existed, (2) the contract was breached, and (3) plaintiff suffered loss/damages flowing from the breach." *Babcock Power, Inc. v. Kapsalis*, No. 3:13-CV-717-CRS, 2019 WL 1518166, at *2 (W.D. Ky. Apr. 8, 2019), aff'd, 854 F. App'x 1 (6th Cir. 2021).

"Courts in . . . Kentucky look to the reasonableness of a noncompetition agreement to determine whether the agreement is enforceable." *AWP, Inc. v. Safe Zone Servs., LLC*, No. 3:19-CV-00734-CRS, 2022 WL 989133, at *7 (W.D. Ky. Mar. 31, 2022), appeal dismissed, No. 22-5373, 2022 WL 16557352 (6th Cir. Oct. 4, 2022) (citing *Advanced Sols., Inc. v. Chamberlin*, No. 07-612-C, 2007 WL 4215654, at *5, 2007 U.S. Dist. LEXIS 87887 at *12 (W.D. Ky. Nov. 27, 2007) ("[I]n Kentucky, ancillary covenants such as a covenant not to compete are valid and enforceable if the terms are reasonable in light of the surrounding circumstances.")). "[I]t has been held in Kentucky that an agreement in restraint of trade is reasonable if, on consideration of the subject, nature of the business, situation of the parties and circumstances of the particular case, the restriction is such only as to afford fair protection to the interests of the covenantee and is not so large as to interfere with the public interests or impose undue hardship on the party restricted." *Hammons v. Big Sandy Claims Serv., Inc.*, 567 S.W.2d 313, 315 (Ky. Ct. App. 1978).

Ecolab submits, first, that its Agreement with Shanklin was valid and supported by

adequate consideration. Indeed, Shanklin received a "Long-Term Incentive Bonus of 52 units valued at $9,588" as consideration for his execution of the Agreement. [R. 7-1, p. 14]; *see also* [R. 1 (Complaint), ¶ 38]. Ecolab further notes that Shanklin signed an agreement containing similar covenants in 2010 as a condition of his initial employment with Ecolab and did so again in 2015. *Id.* "When the employee executes the covenant not to compete at the same time he accepts employment, the latter becomes the consideration for the covenant." *Alph C. Kaufman, Inc. v. Cornerstone Indus. Corp.*, 540 S.W.3d 803, 813 (Ky. App. 2017). According to Ecolab, Shanklin signed the most recent Agreement, at issue here, in 2019, and over the next three years "was promoted to AVP of Sales, received increases in compensation, obtained training in his employment, and was exposed to additional trade secret information, including information and responsibility related to his role as Corporate Accounts Manager for AUS and K-BRO." [R. 7-1, p. 14]; *see also* [R. 1 (Complaint), ¶ 32]. Consideration may also be found where, after execution of an employment agreement, an employee "continue[s] to be employed for a number of years" and "receive[s] raises and promotions while employed" or "acquire[s] specialized knowledge training, and expertise in the collection business which they might not have otherwise acquired." *Charles T. Creech, Inc. v. Brown*, 433 S.W.3d 345, 352 (Ky. 2014) (quoting *Phillips v. Phillips*, 294 Ky. 323, 171 S.W.2d 458 (Ky. 1943)).

During the telephonic conference, Defendants' counsel raised doubts about the authenticity of the Agreement itself, noting Shanklin's name only appears once on the document, that a blank space was left where Shanklin's name should have appeared in one place, and that Shanklin's signature on the Agreement was electronic. Defendants' counsel further represented that Shanklin does not recall signing the agreement. Based on the current record, the Court is unconvinced. As counsel for Ecolab noted, his $9,588 incentive award was expressly conditioned upon his

execution of the Agreement, and at no point did Defendants' counsel indicate Shanklin did not, in fact, receive that award. Further, that Shanklin previously executed at least two similar employment agreements cuts against his convenient argument that he cannot recall executing the one at issue here. Further, there is no disagreement that Shanklin continued to be promoted and to receive increases in compensation. For all these reasons, the Court finds that Ecolab has submitted sufficient evidence indicating the Agreement was valid and, therefore, that Ecolab is likely to succeed on this point.

As for the enforceability of the Agreement, the Court "look[s] to the reasonableness of a noncompetition agreement to determine whether the agreement is enforceable." *Babcock Power*, 2019 WL 1518166, at *2. In doing so, the Court considers "(a) the nature of the business or profession and employment, including the character of the service that is performed by the particular employee; (b) the duration of the restriction; and (c) the scope and/or territorial extent of the restriction." *Fruit of the Loom, Inc. v. Zumwalt*, No. 1:15CV-131-JHM, 2015 WL 7779524, at *4 (W.D. Ky. Dec. 1, 2015) (internal quotation marks omitted). Ecolab suggests the restrictive covenants contained in the Agreement are reasonable and enforceable under Kentucky law.

As Ecolab explains, Shanklin was its AVP of Sales, "and he acted as the leader for all sales and services for Ecolab's Textile Care Division and employees" and "was responsible for sales, business development, contracts and management of sales to AUS and other large customers on a nationwide basis." [R. 7-1, p. 16]; *see also* [R. 1 (Complaint), ¶ 32]. The relevant provisions of the Agreement prohibit Shanklin from holding a similar position with a "Conflicting Organization," such as Washing Systems. *See* [R. 1-1 (Employment Agreement), p. 4]. Courts have found similar restrictions both reasonable and enforceable. *See Gardner Denver Drum LLC v. Goodier*, No. CIV.A.-3:06-CV-4-H, 2006 WL 1005161, *9 (W.D. Ky. Apr. 14, 2006) ("Goodier has taken a

management level position with a direct competitor of Drum and is admittedly still engaging in work relating to the transportation industry at least ten percent of the time. This ten percent is certainly 'competition' of some sort under any reasonable interpretation of the term."); *Fruit of the Loom*, 2015 WL 7779524, at *4 (granting injunctive relief to prevent former sales employee from engaging in sales of similar products for a competitor).

The Agreement further prohibits Shanklin from soliciting or transacting business with a "Customer of the Company" if providing Conflicting Products or Services for the commercial laundry processing industry. [R. 1-1 (Employment Agreement), p. 4]. Courts have likewise found restrictions of this kind both reasonable and enforceable. *See Hammons v. Big Sandy Claims Service, Inc.*, 567 S.W.2d 313 (Ky. App. 1978); *Fruit of the Loom*, 2015 WL 7779524 at *4 ("Zumwalt agreed not to solicit or participate in soliciting Fruit of the Loom and Russell Brands customers, directly or indirectly, to buy products from BSN Sports, or to decrease its level of business with Fruit of the Loom or Russell Brands, for 12 months after termination of his employment with Russell Brands. Kentucky Courts routinely enforce non-solicitation provisions such as the provision in the Agreement.").

Along those lines, the Agreement set an 18-month period for the non-competition and non-solicitation covenants. Other courts have found longer restrictive periods not unreasonable. *See Mgmt. Registry, Inc. v. Calvetti*, No. 3:18-CV-00201-JHM, 2018 WL 1660087, at *1 (W.D. Ky. Apr. 5, 2018) (finding two-year non-compete restriction reasonable); *Gardner*, 2006 WL 1005161, at *8 (deeming three-year non-compete restriction reasonable). Finally, because the scope of the covenants is sufficiently narrow, it is likely that the geographic scope of the Restricted Territory (the United States) is not unreasonable either. *See Edwards Moving & Rigging, Inc. v. Lack*, No. 214-CV-02100-JPM-TMP, 2014 WL 12531102, at *1 (W.D. Tenn. Mar. 5, 2014) (W.D. Tenn.

Mar. 5, 2014) (upholding noncompete pursuant to Kentucky law with "a duration of two years . . . and a national geographic scope, considering [the company's] geographic range of business, have been deemed reasonable under Kentucky law"); *see also Gardner*, 2006 WL 1005161, at *8; *Material Handling Sys., Inc. v. Cabrera*, 572 F. Supp. 3d 375, 391 (W.D. Ky. 2021). Moreover, Ecolab has presented evidence that could lead the Court to find that his restrictive covenants are not unreasonable given Shanklin's high level sales position with Ecolab.

Having determined that Ecolab is likely to succeed on its position that the Agreement was valid and enforceable, the Court turns next to Shanklin's alleged breach. Notably, during the telephonic conference, Defendants' counsel, while maintaining that the Agreement was not validly entered into, acknowledged that Washing Systems is a "Conflicting Organization" as defined in the Agreement. *See* [R. 1-1, p. 4] ("A 'Conflicting Organization' means any person or organization . . . which is engaged in or is about to become engaged in the research on, or the development, production, marketing or sale of, or consulting pertaining to, a Conflicting Product or Service."). And while Defendants' counsel admitted he was not apprised of the precise nature of Shanklin's work with Washing Systems, the Court finds that Ecolab has made a sufficient showing, at this juncture, that, as Director of Business Development for Washing Systems, *see* [R. 1 (Complaint), ¶ 61], Shanklin is employed in a substantially similar role as that he held with Ecolab, in violation of the Agreement. *See* [R. 1-1, p. 3] ("Employee will not within the Restricted Territory . . . render services to a Conflicting Organization . . . in any role or position that is the same or substantially similar to any position Employee held at the Company in the eighteen (18) month period immediately preceding Employee's cessation of employment with the Company[.]").

For all these reasons, the Court finds Ecolab is likely to succeed on the merits of at least some of its breach of contract claims against Shanklin, and this factor counsels in favor of granting

a temporary restraining order related thereto.

## 2. Irreparable Harm

Next, "[i]rreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated by money damages." *Owensboro Specialty Polymers, Inc. v. Daramic, LLC*, No. 4:20-CV-163-JHM, 2020 WL 13577473, at *1 (W.D. Ky. Sept. 25, 2020). Typically, "a plaintiff's harm is not irreparable if it is fully compensable by money damages." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992); *see also SEIU Health Care Michigan v. Snyder*, 875 F. Supp. 2d 710, 723 (E.D. Mich. 2012) ("Monetary damages, however substantial, do not constitute irreparable harm.") (citation omitted). To sufficiently demonstrate such irreparable injury for purposes of a TRO, the moving party must allege a harm that is "'so immediate' that relief is necessary before a preliminary injunction hearing can occur." *Touzi Tech LLC v. BioFuel Mining, Inc.*, No. 3:22-cv-00002-GFVT, 2022 WL 127970, at *1 (E.D. Ky. Jan. 13, 2022) (citing *Branch Banking and Trust Co. v. Jones*, 5:18-cv-610-JMH, 2018 WL 10772684, at *2 (E.D. Ky. Nov. 19, 2018)).

In addition to being immediate, the alleged irreparable harm must not be "speculative or theoretical." *Becerra*, 2022 WL 413680, at *2 (quoting *D.T. v. Sumner Cnty. Schs.*, 942 F.3d at 327). In other words, to demonstrate irreparable harm, the moving parties must show that, in the absence of injunctive relief, "they will suffer 'actual and imminent' harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006). Importantly, "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Becerra*, 2022 WL 413680, at *2 (quoting *Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991)).

On this factor, Ecolab suggests that Shanklin and Washing Systems are attempting to poach a long-term client of Ecolab's, AUS, by underbidding Ecolab at an upcoming submission by utilizing the confidential information and trade secrete Shanklin downloaded onto his personal thumb drive. As outlined in the cases below, such actions threaten customer relations and good will and threaten fair competition, which is difficult to calculate for purposes of monetary damages. In addition, Ecolab believes Shanklin will use Ecolab's trade secrets and other confidential information to directly compete with Ecolab in other manners.

Indeed, in cases where trade secrets are at issue, irreparable harm may be established by the misappropriation and threatened disclosure of trade secrets themselves, a clear threat to fair competition. *RGIS, LLC v. Gerdes*, 817 F. App'x 158, 163 (6th Cir. 2020) (affirming district court's grant of a preliminary injunction because "disclosure of [plaintiff's] trade secrets would harm its ability to compete with its competitors"). Moreover, "the unauthorized use—actual or threatened—of confidential information constitutes irreparable harm sufficient for issuance of injunction." *Stryker Corp. v. Bruty*, No. 1:13-CV-288, 2013 WL 1962391, at *7 (W.D. Mich. May 10, 2013). Here, as stated, Ecolab has produced electronic records showing that Shanklin downloaded confidential information and trade secrets onto a personal flash drive in the weeks leading up to his resignation from Ecolab. *See* [R. 7-4]. Shanklin's downloads occurred after he and Washing Systems had been discussing Shanklin's move to Washing Systems for at least several weeks or months, and after AUS released its RFP to Ecolab and Washing Systems. The Court finds that the potential harm of Shanklin's and/or Washing System's unauthorized use of this information "constitutes irreparable harm sufficient for issuance of injunction." *Stryker Corp*, 2013 WL 1962391, at *7.

For these reasons, the irreparable harm factor supports issuing a temporary restraining

order.

### 3. Balance of Equities

Ecolab submits that "[t]he serious and irreparable harm that Ecolab will suffer if the Court denies its motions for temporary restraining order and preliminary injunction far outweighs the potential harm, if any, to Defendants and other interested third parties if the restraining order is granted." [R. 7-1, p. 24]. Although, as mentioned, Defendants have not had an opportunity to file a responsive brief, Defendants' counsel raised few concerns regarding the harm Shanklin or Washing Systems might suffer if an injunction is issued related to protection of trade secrets and confidential information. Defendants' counsel did note, however, a strong objection to the extent Ecolab seeks for Shanklin's employment with Washing Systems to be terminated entirely. The Court acknowledges that Shanklin would, indeed, suffer harm if Ecolab was seeking such relief (and that relief was granted), but that is not the case. Rather, Ecolab seeks to enforce the specific, narrowly tailored non-compete, non-disclosure, and non-solicitation covenants in the Agreement.

For this reason, the Court finds that, on the current record, the Court knows of no harm Shanklin or Washing Systems would suffer if Shanklin is required to abide by the enforceable terms of the Agreement, which, based on the current record, the Court believes is likely valid and enforceable and was freely entered into. *See Brake Parts, Inc. v. Lewis*, 443 F. App'x 27, 33 (6th Cir. 2011) (finding the balance of harm favored the plaintiff where the defendant "knowingly and illegally placed itself in the position to be placed out of business"); *see also Mgmt. Registry, Inc.*, 2018 WL 1660087, at *2 (finding "that by restraining Plaintiffs to refrain from doing what they indicate they are not doing will not harm them"); *Hickman v. Turitto*, No. 1:06-CV-151, 2007 WL 1080090, at *3 (E.D. Tenn. Apr. 9, 2007) (discounting harm to defendant in enjoining him "from doing something he already should not be doing"). Accordingly, this factor counsels in favor of

granting a temporary restraining order.

### 4. Public Interest

Lastly, the Court finds a temporary restraining order is in the public interest. Ecolab notes that because Shanklin voluntarily quit his employment with Ecolab, the public interest will be served by a temporary restraining order. The Court agrees. *See Edwards Moving*, 2014 WL 12531102, at *3 ("The Court finds that 'Kentucky public policy [] favors enforcement of noncompete agreements where an employee voluntarily gives up his employment.'"); *see also Hoover Transp. Servs., Inc. v. Frye*, 77 Fed. Appx. 776, 785 (6th Cir. 2003) ("[T]he public has an interest in discouraging unfair trade practices. . . ."). Moreover, it is in the public interest to enforce valid contractual agreements freely entered into. *FirstEnergy Sols. Corp. v. Flerick*, 521 Fed. Appx. 521, 529 (6th Cir. 2013) ("[T]he public interest is always served in the enforcement of valid restrictive covenants contained in lawful contracts."); *Zumwalt*, 2015 WL 7779524, at *5 ("No public policies appear to be implicated by the issuance of the preliminary injunction in this case other than the general public interest in the enforcement of voluntarily assumed contract obligation."). This factor therefore supports issuing a temporary restraining order.

The Court therefore finds that each relevant factor counsels in favor of issuing a temporary restraining order that maintains the status quo.

### B. Limited Expedited Discovery

Ecolab also seeks leave to commence expedited discovery, including depositions of Shanklin and a Fed. R. Civ. P. 30(b)(6) deposition of Washing Systems, to be limited to three (3) hours, and requests for documents immediately in aid of the preliminary injunction proceeding. [R. 7-6, p. 5]. During the telephonic conference, Defendants' counsel expressed no objection but sought the same leave to depose Ecolab and tender document requests. The Court agrees that

limited discovery specifically tailored to Ecolab's request for injunctive relief and to allow the parties to prepare for a forthcoming preliminary injunction hearing is appropriate.

Lastly, Ecolab requests that Defendants be ordered to make certain electronic devices available for inspection and imaging. *Id.* at 5. During the telephonic conference, the parties confirmed that at this time, all devices belonging to Ecolab, including laptops and cell phones, have been returned by Shanklin and that Ecolab may examine those items as it sees fit. The parties also agreed that within two (2) days of entry of this Order, Shanklin would make available for inspection any thumb drives that have or may contain Ecolab's confidential information and/or trade secrets to a neutral third party that the parties shall agree upon. Beyond that, as the Court indicated during the telephonic conference, it does not find it appropriate at this time to require Shanklin to provide any of his personal devices or electronic accounts for inspection. *See Campbell All. Grp., Inc. v. Forrest*, No. 5:15-CV-667, 2015 WL 13718031 (E.D.N.C. Dec. 28, 2015) (finding, for purposes of preparing for preliminary injunction hearing, requiring defendants to provide "personal computers, smartphones, PDAs and work computers for inspection and forensic analysis and 'all' correspondence between defendants and their current employer at any time" was not "narrowly tailored"); *see also Bankers Life & Cas. Co. v. Mcdaniel*, No. 3:21-CV-00247, 2021 WL 1165974 (M.D. Tenn. Mar. 26, 2021); *Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072 (N.D. Cal. 2016).

### C. Conclusion

Based on the parties' stipulation [R. 12-1], **IT IS HEREBY ORDERED** as follows:

1. Defendants are hereby temporarily enjoined and restrained as set forth in the following paragraphs:

A. Shanklin, Washing Systems and their respective agents, servants, employees, representatives, and attorneys, and other persons who are in active concert or participation with any of the foregoing (collectively, "Covered Persons") are temporarily ordered, restrained and enjoined as follows:

i. Directly or indirectly, disclosing or making any use of any trade secret and/or confidential information of Ecolab;

ii. Must provide a full and complete accounting of any electronic devices, email accounts, cloud-storage accounts, and other devices/accounts that are within Shanklin's and/or Washing Systems' current possession, custody, or control and which contain or may contain Ecolab's trade secret and/or confidential information;

iii. Must take all necessary steps to maintain and preserve all potentially relevant evidence regarding the allegations in the Complaint, including, but not limited to, all indicia and potential evidence relating to Shanklin's alleged misappropriation of Ecolab's trade secrets and confidential/proprietary information and his and others' potential access of that same information by any and all electronic devices, email accounts, including internet e-mail accounts, cloud-storage based accounts, and the like within its possession, custody or control; and

iv. Must turnover for inspection, imaging, and safekeeping to ArcherHall, or another neutral and mutually agreed upon forensic company, within two business days, any USB, flash drive, or external storage devices which contain or may contain Ecolab's trade secret and/or confidential information. Shanklin must maintain these devices in quarantined form and may not open, access, use, disclose, or disseminate any information on such devices. No employee, agent, or person acting on behalf of Washing Systems may be granted access

to view, open, copy, use, disclose, disseminate, or otherwise utilize any information contained on such storage device(s); and

2. Until further Order of the Court, the Covered Persons are restrained from conducting, carrying on, or engaging in any competitive business that was developed and/or implemented, in whole or in part, directly or indirectly, through the use of any Ecolab trade secret and/or confidential information.

3. This Temporary Restraining Order is binding upon Defendants, their agents, employers and any others in active concert or participation with them who receive actual notice of this Order and shall remain binding for a period of fourteen (14) days following entry of this Order unless otherwise modified or extended by the Court or by stipulation of the parties.

4. Ecolab is granted leave to commence expedited discovery, including a deposition of Shanklin and a Fed.R.Civ.P. 30(b)(6) deposition of Washing Systems, each of which will be limited to three (3) hours, resulting in additional time being available to conduct a more thorough deposition of Shanklin and Washing Systems at a later date during the regular course of discovery. Shanklin and Washing Systems' selected 30(b)(6) deponent shall be made available for deposition upon expedited notice by Ecolab, and said depositions shall take place prior to the Preliminary Injunction Hearing, provided that Defendants receive notice of Ecolab's proposed 30(b)(6) deposition topics on or before May 15, 2023.

5. Defendants are granted leave to take one Fed.R.Civ.P. 30(b)(6) deposition of Ecolab Inc., which will be limited to three (3) hours, resulting in additional time being available to conduct a more thorough deposition Ecolab at a later date during the regular course of discovery. Ecolab's selected 30(b)(6) deponent shall be made available for deposition upon expedited notice by Defendants, and said deposition shall take place prior to the Preliminary Injunction Hearing,

provided that Defendants receive notice of Ecolab's proposed 30(b)(6) deposition topics on or before May 15, 2023.

6. Each of the parties is granted permission to immediately serve five (5) requests for production of documents and the opposing served party shall provide responses thereto within five (5) days of electronic service of such requests.

In accordance with the Court's findings, **IT IS FURTHER ORDERED** as follows:

1. Plaintiff's Motion for a Temporary Restraining Order, Preliminary Injunction, and an Order Permitting Expedited Discovery [**R. 7**] is **GRANTED in part** and **DENIED in part**.

2. Defendant John Shanklin and Defendant Washing Systems, LLC and their agents, servants, employees and all persons acting in concert and participation with them, hereby are **TEMPORARILY ENJOINED** as follows:

> i. They are enjoined and prohibited from engaging in any business activities individually or through Shanklin's employment with Washing Systems to the extent it would violate the Employment Agreement.
>
> ii. They are enjoined and prohibited from providing services or activities, including soliciting, directly or indirectly, with any current, former or prospective Ecolab Customer in any way that would violate the Employment Agreement.
>
> iii. Defendant Washing Systems is enjoined and restricted from employing Shanklin in a manner that would violate the Employment Agreement.

3. Ecolab's request that Shanklin be required to make available for inspection and imaging all computers, external storage devices, mobile devices, and all personal Cloud and email accounts including internet-based e-mail accounts in Shanklin's possession and/or control, to

determine the full extent of Shanklin's access, possession, retention, and use of Ecolab's trade secrets or confidential information is not narrowly tailored and is therefore **DENIED**.

4. All parties **SHALL** take any and all necessary steps to maintain and preserve all potentially relevant evidence regarding the allegations in the Complaint and the Motion for Temporary Restraining Order, Preliminary Injunction, and an Oder Permitting Expedited Discovery.

5. This Temporary Restraining Order is effective as of **4:00 p.m. on May 12, 2023** and will expire **on the earlier of a ruling on Ecolab's request for preliminary injunction by the Court, or fourteen (14) days** from its entry in accordance with Federal Rule of Civil Procedure 65(b)(2) unless extended by subsequent order.

6. Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Ecolab shall provide a security bond in the amount of $10,000.00, which the Court considers proper based on the current record, to the Clerk of Court no later than **4:00 p.m. on Monday, May 15, 2023**.

7. A hearing on Ecolab's request for a preliminary injunction is **SET** for **Wednesday, May 24, 2023, at the hour of 10 a.m.**, before the Honorable Claria Horn Boom, United States District Judge, at the Gene Snyder Courthouse in **Louisville, Kentucky**. Counsel shall be present and in the courtroom by **9:45 a.m.**

 This the 12th day of May, 2023.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF KENTUCKY

- 22 -