**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | | |
|---|---|---|
| ECOLAB INC. | ) | |
| PLAINTIFF | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:23-CV-215-CHB-RSE |
| | ) | |
| | ) | |
| JOHN SCOTT SHANKLIN, | ) | |
| WASHING SYSTEMS, LLC, | ) | |
| and KAO USA INC. | ) | |
| | ) | |
| DEFENDANTS | ) | |

**WASHING SYSTEMS, LLC'S MOTION TO SEAL**
**CERTAIN EVIDENCE AND HEARING TRANSCRIPT EXCERPTS**

Defendant/Counterclaim Plaintiff Washing Systems, LLC ("WSI"), by counsel, hereby moves the Court pursuant to Local Rule 5.6 for an Order sealing certain exhibits admitted during the Preliminary Injunction Hearing held January 11, 2024, as well as portions of the Hearing Transcript, to protect WSI's trade secrets and highly confidential information from exposure to the public, including WSI's competitors. WSI tenders a Proposed Order herewith.

**<u>INTRODUCTION</u>**

At the January 11, 2024 Preliminary Injunction Hearing, WSI moved to provisionally seal certain exhibits because they contain WSI's trade secrets and highly confidential information at the heart of WSI's Counterclaim. During the hearing, counsel for Ecolab Inc. ("Ecolab") also elicited testimony about the content of those exhibits, which WSI presently seeks to seal in addition to WSI's highly confidential exhibits. Following the hearing, on January 12, 2024, the Court entered a Memorandum of Preliminary Injunction Hearing and Order (DN 94) provisionally granting WSI's motion to seal its Exhibits 7, 8, 9, 10, 11, and 12 "pending the resolution of a forthcoming motion to seal." In addition, on Ecolab's request, the Court provisionally sealed the transcript time stamp of the preliminary injunction hearing from 3:00 p.m. until 4:20 p.m. (*Id.*).

1

Pursuant to the process outlined at the Preliminary Injunction Hearing, WSI submits this Motion to Seal in order to convert the Order provisionally sealing its exhibits into a permanent order and, in addition, to request that the Court seal additional limited portions of the Hearing Transcript when WSI's trade secret information was discussed.  Specifically, WSI seeks to seal its Exhibits WSI-7, WSI-8, WSI-9, WSI-10, WSI-11, and WSI-12.  In addition, WSI moves to seal a provisionally sealed portion of the Hearing Transcript (DN 102, PageID 2381-2384) including discussion of WSI's chemicals and formulations.

## RELEVANT FACTS

As demonstrated at the January 11, 2024 Preliminary Injunction Hearing, in June 2023, Ecolab's employee downloaded WSI's trade secrets from Washing Systems' Desktop.  In discovery in this matter, Ecolab produced a copy of the "site file backup" that Ecolab downloaded from the Washing Systems' Desktop.  Part of that "site file backup" was a document stored in a Microsoft Access Database format, which was produced by Ecolab in discovery and labelled ECOLAB001310.

WSI introduced ECOLAB001310 as Exhibit WSI-12 in the Preliminary Injunction Hearing.  In addition, however, the database labelled ECOLAB001310 contains over 70 distinct "Tables" within the database.  At the Preliminary Injunction Hearing, WSI introduced four of those tables that its Director of Management and Information Systems had extracted directly from the ECOLAB001310 database into a non-database (spreadsheet) format:  Exhibits WSI-7 (Chem_Master Spreadsheet pulled from Ecolab001310), WSI-8 (WetFormulas Spreadsheet pulled from Ecolab001310), WSI-9 (FormHist Spreadsheet pulled from Ecolab 001310), and WSI-11 (Formula_Plan Spreadsheet pulled from Ecolab 001310).  In addition, the Court admitted a version of the WetFormulas spreadsheet (Exhibit WSI-8) that Ecolab produced in discovery containing a large amount of WSI's trade secrets as well as information that Ecolab's counsel has claimed to be *Ecolab's* confidential information.  Exhibit-WSI-10 (ULTRAX WetFormulas).

**A.** **Summary of the provisionally sealed exhibits and portions of the transcript requested to be sealed.**

WSI seeks to seal its Preliminary Injunction Hearing Exhibits WSI-7, WSI-8, WSI-9, WSI-10, WSI-11, and WSI-12 because those documents contain, at a minimum,[1] WSI's highly confidential trade secrets. Specifically, those documents include voluminous historical data tracking specific metrics (such as load weight and run time) for every load of laundry that WSI has serviced at the Cintas Denver plant dating back nearly a decade; confidential pricing information reflecting how much WSI charges its customer Cintas for every ounce of each specific chemical used in the wash processes at the Denver Cintas plant; and WSI's wash formulas for every classification of textile serviced at the Denver Cintas plant.[2] The wash formulas alone in Ecolab 001310 contain step-by-step instructions (including water fill levels, temperatures, and the particular dose amount for each chemical needed in every step) that explain in detail how WSI washes dozens of classifications of textile.

Ecolab has already sought—and received—the Court's permission to seal certain documents in this litigation because they contained "financial information, formulae, pricing, business development, profit margins, sales histories and similar information[]" which Ecolab contended met "the standards of 'trade secrets' pursuant to the Defend Trade Secrets Act" as well as the Kentucky Uniform Act. (DN 43, PageID 1563-64). The documents introduced by WSI as its Preliminary Injunction Hearing Exhibits WSI-7, WSI-8, WSI-9, WSI-10, WSI-11, and WSI-12 should be treated the same, as they unquestionably contain WSI's financial information, formulae, pricing, business development, and sales histories (in addition to other categories of trade secret information).

In addition to its Exhibits, WSI requests that this Court seal certain portions of the Preliminary Injunction Hearing Transcript containing detailed discussion of WSI's trade secrets. Specifically, WSI

---

[1] WSI does not address herein Ecolab's assertion that Exhibit WSI-10 also contains information that amounts to *Ecolab's* confidential information. That document nevertheless contains WSI's trade secrets, so only the WSI information in that document is addressed herein.
[2] WSI, through its Preliminary Injunction Hearing witnesses, provided more specific explanations of the contents of each of these discrete exhibits. Given the voluminous and highly technical nature of the Exhibits, their contents are generally summarized herein for purposes of the present motion.

moves to seal the provisionally sealed portion of the Hearing Transcript appearing at DN 102, PageID 2381-2384 because, during that portion of the Hearing, WSI's CEO, John Walroth, was questioned and testified about particular data points reflected on the spreadsheets pulled from Ecolab 001310 and marked as Exhibits WSI-7, WSI-8, WSI-9, WSI-10, WSI-11, and WSI-12. The exchange that took place at DN 102, PageID 2381-2384 involved detailed information about some of the very trade secrets that WSI seeks to protect through its Counterclaim. For example, WSI's chemical names and various steps in WSI's wash formula processes were read aloud during this portion of the Preliminary Injunction Hearing. As such, for the same reasons that it seeks to seal Exhibits WSI-7, WSI- 8, WSI-9, WSI-10, WSI-11, and WSI-12, WSI seeks to seal the Preliminary Injunction Hearing Transcript at DN 102, PageID 2381-2384.

## ARGUMENT

Under Local Rule 5.6, a party "must state why sealing is required and must establish that the document sought to be filed under seal is entitled to protection from public disclosure" when that party requests judicial records be maintained under seal. LR 5.6(c). The party seeking to seal records has the burden of overcoming the presumption in favor of openness. *See Kondash v. Kia Motors Am., Inc.*, 767 Fed. App'x 635, 637 (6th Cir. 2019) (citing *Shane Grp., Inc. v. Blue Cross Blue Shield*, 825 F.3d 299, 305 (6th Cir. 2016)). "To meet this burden, the party must show three things: (1) a compelling interest in sealing the records; (2) that the interest in sealing outweighs the public's interest in accessing the records; and (3) that the request is narrowly tailored." *Id.* at 638 (citing *Shane Grp.*, 825 F.3d at 305). "Where a party can show a compelling reason for sealing, the party must then show why those reasons outweigh the public interest in access to those records and that the seal is narrowly tailored to serve that reason." *Id.* (citing *Shane Grp.*, 825 F.3d at 305).

"[T]he existence of a trade secret will generally satisfy a party's burden of showing a compelling reason for sealing documents[.]" *Id.* Put differently, "in civil litigation, . . . trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in confidence. . . [are] typically enough to overcome the presumption of access." *Shane Grp.*, 825 F.3d at 308 (quoting *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 546 (7th Cir. 2002))

(quotation marks omitted; cleaned up); *see also Rudd Equip Co. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 593 (trade secrets are excepted from the strong presumption in favor of openness); *Schnatter v. 257 Group*, 2020 U.S. Dist. LEXIS 101101, *2 (W.D. Ky. June 8, 2020) (trade secrets overcome the strong presumption of openness); *Nixon v. Warner Communications*, 435 U.S. 589, 598 (1978) ("sources of business information that might harm a litigant's competitive standing[]" may be kept under seal); *see also* (DN 49, PageID 1614-15) ("trade secrets are 'a recognized exception to the right of the public access to judicial records.'").

### A. WSI has a compelling interest in sealing certain records containing its trade secrets.

WSI has presented substantial testimony that the content of Exhibits WSI-7, WSI-8, WSI-9, WSI-10, WSI-11, and WSI-1212, as well as the contents of the exchange that took place at DN 102, PageID 2381-2384, constitute "trade secrets" under the federal and Colorado trade secrets laws. Each of these exhibits contain trade secret and proprietary information that WSI now requests be kept under seal. In addition, WSI has provided detailed testimony from several witnesses (as well as the witness from Ecolab who has testified thus far) confirming that the exposure and use of the type of information contained within WSI's Exhibits WSI-7, WSI-8, WSI-9, WSI-10, WSI-11, and WSI-12 would be commercially and competitively damaging to WSI. WSI's Director of Management and Information Systems gave on-the-record descriptions of the kinds of information specifically included in Exhibits WSI-7, WSI-8, WSI-9, WSI-10, WSI-11, and WSI-12, and she confirmed that WSI does not publicly disclose or freely expose any of the information contained within those documents. WSI's CEO testified about the vast resources WSI put forth for the research and development of its proprietary TruPath wash process which is encapsulated within Exhibits WSI-7, WSI-8, WSI-9, WSI-10, WSI-11, and WSI-12.

The Court should seal WSI's Preliminary Injunction Hearing Exhibits WSI-7, WSI-8, WSI-9, WSI-10, WSI-11, and WSI-12 and the transcript at DN 102, PageID 2381-2384 for many of the same reasons that Ecolab requested—and the Court granted—sealing of exhibits Ecolab introduced at the preliminary injunction hearing that took place in May 2023. *See* (DN 43); (DN 49).

**B.      WSI's interests in sealing outweigh any public interest in disclosure.**

Any public interest in disclosure of the documents at issue are outweighed by WSI's interest in protecting its trade secret and confidential information from public disclosure.  While WSI is not aware of any public discourse about this litigation by either the media or the public at large, even assuming *arguendo* that some public interest exists here, WSI's interests in sealing should prevail.  WSI has provided testimony establishing that a competitor's use of the WSI information contained within Exhibits WSI-7, WSI-8, WSI-9, WSI-10, WSI-11, and WSI-12 would easily result in a competitive benefit to that competitor at the detriment of WSI.  As Ecolab has explained, "courts have found that the negative impact on a company's competitive advantages and opportunities outweighs competitors' interests in this information."  (DN 43, PageID 1581).

**C.      The scope of WSI's request to seal is reasonably limited.**

Finally, WSI requests a scope no broader than is necessary to protect its interests.  Of the exhibits the Court admitted at the Preliminary Injunction Hearing, WSI only seeks to seal those that came directly from the database labelled ECOLAB001310 (as well as the database itself).  The information contained within the Ecolab001310 database is at the very heart of WSI's Counterclaim.  WSI's request to shield this information from public disclosure is narrowly tailored to only include the confidential and trade secret information WSI seeks to protect, and WSI does not seek to limit public access to the Court's records beyond those discussed herein.

<u>**CONCLUSION**</u>

For the foregoing reasons, WSI respectfully requests that the Court grant its motion to seal in order to protect its trade secret and confidential information.  A Proposed Order is tendered herewith.

\*        \*        \*

Respectfully submitted,

/s/ Suzanne Marino_____
Jeremy S. Rogers
Sarah D. Reddick
Suzanne Marino
Dinsmore & Shohl LLP
101 South Fifth Street, Suite 2500
Louisville, Kentucky 40202
Phone:  (502) 540-2384
Facsimile:  (502) 585-2207
jeremy.rogers@dinsmore.com
sarah.reddick@dinsmore.com
suzanne.marino@dinsmore.com
*Counsel for Counterclaim Plaintiff Washing Systems, LLC and for Defendants, John Scott Shanklin; Washing Systems, LLC; and Kao USA*

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2024 a true and correct copy of the foregoing Notice was filed with the Clerk of the Court, via the CM/ECF system, and was served on the following via email:

Donald J. Kelly
Jordan M. White
WYATT, TARRANT & COMBS, LLP
400 West Market Street, Suite 2000
Louisville, KY  40202
Tel.: 502.589.5235
Fax: 502.589.0309
E-mail: dkelly@wyattfirm.com
E-mail: jwhite@wyattfirm.com

Martin S. Chester
Matthew Kilby
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Tel.: 612.766.7232
Fax: 612.766.1600
E-mail: martin.chester@faegredrinker.com
E-mail: matthew.kilby@faegredrinker.com

Matthew E. Burkhart
Liam Williams
FAEGRE DRINKER BIDDLE & REATH LLP
300 N. Meridian Street, Suite 2500
Indianapolis, IN  46204
Tel.: 317.237.1262
Fax: 317.237.1000
E-mail: matthew.burkhart@faegredrinker.com
E-mail: liam.williams@faegredrinker.com

*Counsel for Plaintiff/Counterclaim Defendant Ecolab Inc.*

*/s/ Suzanne Marino*_____
*Counsel for Washing Systems, LLC*